# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **08-07872-hb**

### ORDER ON MOTION FOR RELIEF FROM STAY

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**12/01/2011**



US Bankruptcy Judge
District of South Carolina

Entered: 12/02/2011

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| IN RE: | C/A No. 08-07872-HB |
|---|---|
| | Chapter 13 |
| James W Jeter and Ida M Geter[1], | **ORDER ON MOTION FOR RELIEF** |
| Debtor(s). | **FROM STAY** |

**THIS MATTER** came before the Court for hearing on the Amended Motion for Relief from Stay filed by Wells Fargo Delaware Trust Company, N.A. as trustee for Vericrest Opportunity Loan Trust 2010-NPL1[2] and the Objection thereto filed by James W. Jeter and Ida M. Geter ("the Jeters").[3] The Jeters assert that Movant has failed to prove that it has standing or is a real party in interest with the ability to pursue the Motion. The Court requested and the parties filed briefs supporting their positions.[4]

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. After a review of the pleadings, the submitted briefs, and the relevant case law, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c).[5]

**FACTS**

The Jeters filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on December 5, 2008. Their bankruptcy schedules, signed under penalty of

---

[1] Joint Debtor lists her name "aka Ida Geter, Ida M. Jeter, Ida Jeter and Ida Matilda Geter."
[2] Doc. No. 69, filed Sept. 2, 2011. The original Motion for Relief from Stay was filed by Vericrest Financial, Inc. (Doc. No. 63, filed June 24, 2011). The Motions are identical except for changes in the Movants and the arrearage amounts.
[3] Doc. No. 64, filed July 7, 2011.
[4] Debtors filed their brief on Nov. 1, 2011. (Doc. No. 73). Movant's brief was submitted on Nov. 4, 2011. (Doc. No. 74).
[5] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also so adopted.

1

perjury, list The CIT Group as a secured creditor with a first mortgage in the amount of $70,000 encumbering their residence.[6] In addition, their initial Chapter 13 plan, signed by the Jeters, proposed that they would pay $212.20 per month to The CIT Group for the arrearages on their secured mortgage debt through the Chapter 13 plan payments to the Trustee, and would continue with regular post-petition payments due pursuant to the note and mortgage.[7]

On January 22, 2009, LSF6 Mercury REO Investments, LLC, filed a proof of claim indicating a mortgage balance of $75,782.55 and pre-petition arrearages of $13,910.37, including a detailed breakdown of the arrearage amount. The address listed for payment was The CIT Group, 715 S. Metropolitan, Ste. 150, Oklahoma City, OK 73108. The claim attached a Note from the Jeters payable to Wilmington Finance, Inc., executed on June 5, 2006, for the purchase of their residence. Also attached is a Mortgage executed on the same day in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Wilmington Finance, Inc., which is recorded in Book 3686 at Page 588 in the Spartanburg County Register of Deeds Office.[8]

Also on January 22, 2009, LSF6 Mercury REO Investments, LLC, allegedly as assignee of The CIT Group/Consumer Finance, Inc., filed an Objection to Confirmation of the Debtors' proposed plan.[9] Debtors immediately amended their Schedule D to list the claim of The CIT Group as disputed.[10] Debtors also filed an Objection to LSF6's proof of claim asserting that the required documentation was not attached to the claim

---

[6] Doc. No. 25, Sch. D, filed Dec. 28, 2008.
[7] Doc. No. 31 at 2, ¶ 4, filed Dec. 28, 2008.
[8] POC 2-1, filed Jan. 22, 2009.
[9] Doc. No. 34.
[10] Doc. No. 36, filed Jan. 27, 2009.

and there was no proof of its standing to file the claim.[11] However, by correspondence filed on the case docket the Jeters later withdrew their Objection to the proof of claim.[12]

After the withdrawal of the Objection to the claim, the Jeters filed several amended plans.[13] The most recent plan was filed on March 24, 2009, wherein the Jeters again proposed payment of a long term mortgage debt to The CIT Group, increasing the monthly arrearage payment to $240 per month as was necessary to pay the filed claim, and proposing that regular post-petition contractual payments to The CIT Group would continue.[14] This plan was confirmed on March 30, 2009, without objection or with all objections resolved or overruled.[15] As a review of the docket does not indicate any act by the Chapter 13 Trustee or any creditor to dismiss this case, it can be concluded that the Jeters have continued to make payments sufficient to sustain their case to the Trustee pursuant to this plan since that time, with a portion designated per the confirmed plan to be paid to The CIT Group, and have enjoyed the protections of Chapter 13 as a result.

More than two years after confirmation, on June 24, 2011, Vericrest Financial, Inc. ("Vericrest") filed a Motion asserting that it is entitled to relief from the automatic stay of 11 U.S.C. § 362(a). The grounds for Vericrest's Motion are that the Jeters failed to make regular payments (not paid through the Trustee) on the mortgage secured by their residence since January 2011 and there is no equity in the subject property.[16] The Jeters objected to the Motion, asserting that there is no documentation attached to the Motion to

---

[11] Doc. No. 37, filed Jan 27, 2009.
[12] Doc. No. 41, filed Mar. 10, 2009.
[13] Doc. Nos. 42 & 44.
[14] Doc. No. 48 at 2, ¶ 4, filed Mar. 24, 2009.
[15] Doc. No. 49.
[16] Doc. No. 63. However, the Court notes that the Certification of Facts attached to the Motion state that the fair market value of the property is $101,100.00 and liens total only $75,782.55. *Id.* at 5.

3

show that Movant is the holder of the Note or Mortgage or a real party in interest sufficient to enforce the Note or Mortgage; therefore, the Motion should be denied.[17]

On September 2, 2011, the same attorney that filed the Motion for Vericrest filed an *Amended* Motion, changing the Movant from Vericrest to Wells Fargo Delaware Trust Company, N.A. as trustee for Vericrest Opportunity Loan Trust 2010-NPL1, and the arrearage amount from $3,541.98 to $5,993.19.[18] Otherwise, the Motions are the same. The Amended Motion and accompanying Memorandum assert that on July 18, 2008, the Mortgage was assigned by MERS to The CIT Group/Consumer Finance, Inc., although MERS is not named as nominee for Wilmington Finance, Inc. on the Note.[19] Wells Fargo asserts that The CIT Group assigned the Mortgage to Deutsche Bank National Trust Company as trustee on behalf of LSF6 Mercury REO Investments Trust Series 2008-1 on February 17, 2009[20], and that on March 1, 2011, Deutsche Bank assigned the mortgage to Wells Fargo Delaware Trust Company, N.A. as trustee for Vericrest Opportunity Loan Trust 2010-NPL1 by and through Deutsche Bank's attorney in fact Vericrest Financial, Inc.[21]

---

[17] Doc. No. 64.

[18] Doc. No. 69.

[19] *See* Jt. Ex. 2 (Assignment of Mortgage from MERS, as nominee for Wilmington Finance, to The CIT Group, recorded on August 1, 2008, in Book 4118 at Page 568 in the Spartanburg County Register of Deeds Office); *see also* Doc. No. 69, Ex. 1 (a copy of the Mortgage stating that MERS is the nominee for Wilmington Finance); *but see* Jt. Ex. 1 (a copy of the Note which does not state that MERS is the nominee for Wilmington Finance).

[20] *Id.* (Assignment of Security Deed from The CIT Group to Deutsche Bank National Trust Company, as trustee on Behalf of LSF6 Mercury REO Investments Trust Series 2008-1, recorded on March 4, 2009, in Book 4191 at Page 774 in the Spartanburg County Register of Deeds Office).

[21] *Id.* (Assignment of Mortgage from Deutsche Bank National Trust Company, as trustee on Behalf of LSF6 Mercury REO Investments Trust Series 2008-1 to Wells Fargo Delaware Trust Company as Trustee for Vericrest Opportunity Loan Trust 2010-NPL1, recorded on March 23, 2011, in Book 4449 at Page 417 in the Spartanburg County Register of Deeds Office). This document was not attached to the initial or Amended Motion, but was presented at the hearing.

Despite the information set forth in their initial schedules and confirmed plan, the Jeters argue in their brief that Wilmington Finance still owns the note because the note was not properly transferred from that original creditor. They argue that the only possible indorsement of the note was through an Allonge that is signed in blank by CIT Group on an unknown date[22], and that there is reason to believe that it was not attached to the note as required by S.C. Code Ann. § 36-3-204. Consequently, the Jeters assert that the note was never properly indorsed by anyone. Therefore, there was no indorsement to The CIT Group, so it never properly owned the Note and the Allonge is meaningless. This position, if correct, could affect the status of all parties claiming an interest in the Note and Mortgage after that event, including the Movant. The Jeters, therefore, assert that Wells Fargo has not shown that it is the holder of the Note or Mortgage and that it is not a real party in interest.

Wells Fargo responded by producing various assignments at the hearing referenced above. In addition, Wells Fargo asserted that they have provided counsel for the Jeters with copies of a Power of Attorney appointing Vericrest Financial, Inc., successor to The CIT Group, attorney-in-fact for Deutsche Bank National Trust Company and a copy of an Allonge to the Note endorsed in blank by The CIT Group. Movants also assert that they are in possession of the original Note; however, it was not presented at the hearing.

### DISCUSSION AND CONCLUSIONS OF LAW

The Jeters correctly assert that relief from the automatic stay may only be granted to and upon the request of a "party in interest." *In re Woodberry*, 383 B.R. 373, 377 (Bankr. D.S.C. 2008). Wells Fargo responds by asserting that the Jeters are bound by

---

[22] Jt. Ex. 1.

5

confirmation of the plan and the doctrine of *res judicata* and are, therefore, precluded from presenting any challenge to the pre-confirmation transfer of the Note to The CIT Group.

It is well-established that the doctrine of *res judicata* applies in the bankruptcy context. *Brown v. Felsen*, 442 U.S. 127, 132, 99 S. Ct. 2205 (1979). Confirmation is considered "'the bright line in the life of a Chapter 13 case at which all the important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan.'" *In re Durham*, 260 B.R. 383, 386 (Bankr. D.S.C. 2001) (quoting *In re Sanders*, 243 B.R. 326, 330 (Bankr. N.D. Ohio 2000)). Further, this Court has consistently "held that a confirmed chapter 13 plan, which represents a new contractual agreement between debtors and their creditors, is *res judicata* on the issue of a creditor's rights as a party in interest with standing to seek relief from the stay." *In re Neals*, C/A No. 10-07164-JW, 2011 Bankr. LEXIS 3746, at *8-*9 (Bankr. D.S.C. Oct. 6, 2011) (citing *In re Burretto*, C/A No. 05-07146-JW, 2008 Bankr. LEXIS 4138, at *6 (Bankr. D.S.C. July 23, 2008)).

The Jeters were the proponents of a confirmed Chapter 13 plan that identified The CIT Group as the proper party in interest to receive its proposed plan payments and required that regular contractual payments would also be made directly to that creditor by the Jeters. In addition, prior to confirmation, the Jeters withdrew their Objection to the Proof of Claim of LSF6 (alleged assignee of The CIT Group) filed for payment under that plan and increased the payment amount to that creditor thereafter. The Jeters had ample opportunity to assert and pursue any issues regarding the secured creditor's status or the authenticity of any transfer(s) that led to The CIT Group's claimed position at that

time and elected not to further pursue any such issues. Consequently, the Jeters cannot claim well after confirmation of the plan that The CIT Group was not the proper party. This position is contrary to the stance taken by the Jeters in their initial schedules, as proponents of the plan, and it conflicts with their course of conduct up until the time that the first Motion for Relief from Stay was filed. Only after Movant asserted a default did the Jeters raise or revive any such challenge. *See Burretto*, 2008 Bankr. LEXIS 4138, at *9-*10 ("Debtors' sworn schedules, the confirmed Plan, the uncontested proof of claim, the uncontested certification of facts, and Debtors' performance to [this creditor] during the three years that this case has been pending should, at minimum, alert [Debtors' counsel] that his clients looked to [this creditor] as the proper party in interest in this proceeding.").

Therefore, the Court finds that the Jeters are barred by *res judicata* from asserting defenses in response to the Motion for Relief from Stay based on any pre-confirmation defect in the transfer of the Note and Mortgage to The CIT Group. Further, Wells Fargo is entitled to the benefits of this *res judicata* effect for the instant Amended Motion, assuming that it can establish a post-confirmation transfer record of the Note and Mortgage originating from the time of confirmation.[23] *See Marathon Fin. Co. v. HHC Liquidation Corp.*, 483 S.E.2d 757, 769 (S.C. Ct. App. 1997) ("[I]t is also the general rule that: 'A successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of *res judicata* to the same extent as his transferor . . .'" (quoting *Restatement (Second) of Judgments* § 44 (1982)).

---

[23] This holding involves any issues related to the transfer of the Note and Mortgage to The CIT Group. However, the Court reserves comment on any binding effect that confirmation of the plan may have on any subsequent proceedings in any other court.

7

After careful review of the arguments of the parties, the Court is unclear about the challenges to Movant's standing that the Jeters may continue to pursue given this ruling on Movant's *res judicata* argument. Further, the focus of the hearing on the Motion for Relief from Stay and the subsequent pleadings was on whether the Movant is an appropriate party to pursue this Amended Motion. The parties did not sufficiently address the substance of the Motion—that is, the appropriate result if the Movant is entitled to pursue the requested relief. As a result, further proceedings are required to allow the Jeters to refine any additional challenges to Movant's standing given the Court's partial ruling herein, and to consider appropriate relief if standing exists.

**IT IS THEREFORE, ORDERED**:

1. That the Jeters, on the specific facts of this case, are barred by *res judicata* from asserting defenses in response to the Amended Motion for Relief from Stay based on any pre-confirmation defect in the transfer of the Note and Mortgage to The CIT Group. Further, Movant is entitled to the benefits of this *res judicata* effect for the instant Motion, assuming that it can establish a post-confirmation transfer record of the Note and Mortgage originating from the time of confirmation.

2. That further hearing on this matter is hereby scheduled for **Thursday, January 12, 2012, at 11:00 a.m.** at the Donald Stuart Russell Federal Courthouse, 201 Magnolia Street, Spartanburg, South Carolina 29306-2355. Any additional pleadings in support of any party's position must be filed with the Court on or before **January 3, 2012**.[24]

---

[24] The Movant has previously waived any automatic lifting of the stay pursuant to 11 U.S.C. §362(e).

8